**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch**

Civil Action No. 12-cv-00859-RPM

FOREST DARYL TEMPLETON,

    Plaintiff,

v.

H. THOMAS FEHN,
ORLY DAVIDI,
GREGORY J. SHERWIN, and
FIELDS, FEHN & SHERWIN,

    Defendants.

---

**MEMORANDUM OPINION AND ORDER FOR SUMMARY JUDGMENT OF DISMISSAL**

---

While working as a registered representative securities broker in the office of United Securities Alliance, Inc. ("United Securities"), Plaintiff Daryl Templeton sold securities to Robert and Lisa Cordaro ("the Cordaros") totaling $515,000. Templeton left United Securities and began working as a registered representative at CapWest Securities, Inc. ("CapWest") in September 2005. One of the Cordaros' securities, a $100,000 note in Medical Provider Financial Corporation II ("MedCap II"), matured in June 2007. On Templeton's advice, the Cordaros re-invested the money they received into another $100,000 MedCap note ("the MedCap IV Note"). CapWest was the broker-dealer on that transaction.[1]

---

[1] Medical Capital Holdings, Inc. was the parent company of MedCap II and of MedCap IV.

On November 18, 2009, Investors Recovery Service ("IRS") submitted a claim to the Financial Industry Regulatory Authority ("FINRA") on behalf of the Cordaros against United Securities, its principals, Templeton and CapWest. The Cordaros sought to recover the $515,000 they had invested through Templeton, claiming that Templeton sold them speculative securities without adequate disclosure, in violation of state and federal law.

CapWest had an insurance policy issued by Catlin Specialty Insurance Company ("Catlin") that covered Templeton and other registered representatives at CapWest. Catlin assumed the defense of Templeton and CapWest, subject to a reservation of rights. Catlin retained the law firm of Markun Zusman & Compton LLP ("Markun Zusman") to represent Templeton and CapWest in the Cordaro matter, and to defend other, unrelated FINRA arbitrations brought against CapWest and other registered representatives.

In March 2010, a receiver appointed pursuant to litigation initiated by the U.S. Securities & Exchange Commission filed a lawsuit in the U.S. District Court for the District of Oregon seeking recovery from Templeton, CapWest and many other brokers in connection with securities they sold investors in Sunwest Management, Inc. Templeton retained the Markun Zusman firm to represent him in the Sunwest action.

On February 4, 2010, CapWest received the Cordaros' Statement of Claim and sent it to Catlin and to H. Thomas Fehn of the law firm of Fields, Fehn and Sherwin. Fehn regularly did legal work for CapWest.

On February 18, 2010, Dale Hall, president and CEO of CapWest, sent a memo to Templeton and other CapWest registered representatives notifying them that those named in the FINRA arbitrations would be required to pay 75% of the legal fees incurred in defending

those claims. Fehn was identified as "our attorney" in Hall's memorandum. Pursuant to the memorandum, $100 was deducted from Templeton's monthly paychecks.

On April 20, 2010, Markun Zusman filed an Answer to the Cordaros' Statement of Claim on CapWest and Templeton's behalf.

Templeton left CapWest in August 2010. His last payment for defense costs was made on August 16, 2010.

On September 28, 2010, Tom Fehn submitted a "global settlement" proposal to representatives of four FINRA claimants, including the Cordaros, with arbitrations pending against CapWest. The proposal stated:

> We have also eliminated the cost of defense element because CapWest is not in a position to defend itself with respect to all of these claims. Because of these costs, CapWest is no longer able to pay legal fees to Markun, Zusman and Compton, the law firm appointed by the insurance company. . . .
>
> Please be aware that any funds available for settlement are derived from a professional liability policy issue to CapWest by Catlin Specialty Insurance Company. . . .
>
> The amount proposed to settle certain claims is the amount derived by adding up all of the meritorious claims and dividing them into the insurance proceeds available. This amounts to approximately 3.6% of the claimed amount. We realize this is a small amount, but there is nothing that can be done about that. We require 100% acceptance to make this settlement proposal work. If we cannot settle with all of you, we will be unable to settle with any of you. If that is the case, CapWest will defend the cases as best it can on first come, first served basis, and then once its coverage and funds are exhausted, it will cease business activity.

[Doc. 80, Ex. 9 at 2.] Fehn's settlement proposal referred only to CapWest's position and intentions; it did not once refer to CapWest's registered representatives. Templeton did not receive a copy of the proposal.

Markun Zusman withdrew as counsel for CapWest and Templeton by letter to FINRA dated November 5, 2010. The letter stated that Tom Fehn was CapWest's current general

counsel and provided Fehn's contact information. [Doc. 80, Ex. 10.] Templeton did not receive a copy of the withdrawal letter. Fehn did.

A hearing on the Cordaros' FINRA claim was set for March 29, 2011. On November 12, 2010, a lawyer with Markun Zusman notified Templeton that the firm was not representing him in the Cordaro matter. Templeton notified FINRA by e-mail of his mailing address in South Dakota.

On February 7, 2011, Templeton e-mailed Dale Hall and Ed Price of CapWest, asking:

> Will one of you let me know what is happening regarding the Cordaro arbitration? Is Tom Fein [sic] representing CapWest & me?
>
> Where does the settlement agreement stand at this time? Is this case part of the settlement?
>
> If I need to be in Albuquerque at the end of March [for the FINRA hearing] I need to start adjusting [my] travel plans.

[Doc. 80, Ex. 12.] Hall e-mailed Templeton later that day stating that, "[a]t this moment" Fehn was representing Templeton, and that "[w]e are working on a final plan with Catlin to make that permanent." Hall also said that Fehn was working on a settlement with the Cordaros. [Id.] Fehn was not copied on this exchange.

On March 14, Templeton sent Hall a financial affidavit that Hall requested for Tom Fehn's use in settlement negotiations. Templeton asked Hall to "pass on to Fehn that I am not working and have received no income since 2009." [Doc. 80, Ex. 16.]

Templeton e-mailed Hall on March 17, 2011 asking if there was anything new in the Cordaro matter and if Hall had received the financial affidavit. [Doc. 80, Ex. 18.] Hall responded that day, stating: "Got the statement. Tom Fehn was to talk to the lawyer this week. Will let you know." [Id.]

On March 21, 2011, Dale Hall e-mailed Talin Kalfayan, a legal assistant at Fehn's firm, asking for an update on the Cordaro matter. [Doc. 80, Ex. 20 at 3.] Two days later, Kalfayan e-mailed Hall and said: "Tom asked me to remind you that we don't represent Daryl Templeton. Tom is out this week, but the update is that we are trying to settle the case." [Id. at 2.] Hall replied that day: "We should be representing Daryl. I mentioned that to Tom. If we alienate Daryl our goose could be cooked." [Id. at 1-2.] Kalfayan responded: "I will let him [Fehn] know asap." [Id. at 1.]

On March 25, 2011, Orly Davidi, an associate at Fehn's firm, reached an oral agreement with the Cordaros' representative to settle their claim against CapWest regarding the MedCap IV Note for $13,500. Davidi advised FINRA that day that the settlement was with regard to the claim against "CapWest Securities, Inc. **only**." [Doc. 67, Ex. 13 (emphasis in original).] The Cordaros' representative notified FINRA Dispute Resolution that day that they were dismissing their claims against CapWest with prejudice. [Doc. 80, Ex. 25 at 5.] As required by FINRA, the Cordaros' representative sent Templeton notice of the settlement at the address FINRA had on file; the address was incorrect. [Doc. 130, Statement of Undisputed Facts ("SUF") ¶ 24.]

Also on March 25, 2011, Dale Hall advised Templeton that the matter had settled, and that the arbitration hearing in Albuquerque had been vacated. The FINRA hearing proceeded in Templeton's absence on March 29, 2011. The United Securities principals had been dismissed before the hearing. United Securities did not appear.

On April 4, 2011, Orly Davidi sent a draft settlement agreement to the Cordaros' representatives that included CapWest and Templeton as released parties to the agreement. Richard Sacks, the Cordaros' attorney, testified that he and the Cordaros refused to sign the

5

agreement because the Cordaros "never agreed to dismiss Forrest Templeton from the case when we settled it with CapWest as regards MedCap." [Doc. 80, Ex. 28.]

The FINRA panel issued its decision and entered a $500,000 award, plus interest and costs, against Templeton and United Securities on April 12, 2011. The panel did not make any findings of fact and therefore did not separate the investments the Cordaros made through Templeton when he was at United Securities with the one investment the Cordaros made through Templeton while he was with CapWest. A copy of the award was sent to Templeton on April 12, 2011 at an address in Santa Fe, New Mexico.

In an e-mail to Dale Hall on April 15, Templeton asked when he would receive the Cordaro settlement in writing. [Doc. 80, Ex. 30 at 2.] Hall then contacted Orly Davidi about the settlement. [Id. at 1.] Davidi responded as follows:

> The latest update is that Plaintiff's attorney is upset that Daryl Templeton is included in the settlement at all. We told him that Mr. Templeton must be included as he is an insured under the policy (with respect to the investment MedCap IV at CapWest Securities, Inc). Plaintiff's attorney said he would take that news back to his client. We have not heard from them yet, but the case has already been taken off calendar [sic] at FINRA.

[Id.]

On April 25, after learning of the FINRA panel's decision, Dale Hall e-mailed Tom Fehn and stated: "Did FINRA misread something? I thought [the Cordaro matter] was adjourned with a settlement." [Doc. 80, Ex. 31.] Fehn replied that the settlement pertained to CapWest and Templeton only as to the MedCap IV Note, and that the matter went forward "as to the rest." [Id.]

Sometime in late April, Templeton's mail forwarding service sent the FINRA award notice from his address in New Mexico to his address in South Dakota. He testified that

6

when he received the notice he contacted Markun Zusman because he "wanted some legal advice about how [the award] came to be . . . . [and] what we could do to proceed to overturn . . . or resolve it . . . ." [Doc. 87, Ex. I at 103:5-18.] Markun Zusman responded that they could not get involved "because they were involved with other issues with CapWest at the time, and they felt there was a conflict there." [Id. at 104:2-5.] Templeton did not contact Catlin or the Attorney Defendants.

Templeton e-mailed Dale Hall on April 28, 2011:

> Tom Fehn or his firm obtained a settlement with Cordaro regarding the CapWest [arbitration], on behalf of our [errors & omissions insurance]. Did this settlement include me, if not why not? It was my understanding from you that Tom was representing CapWest and Me [sic] in this [arbitration]. If so, will I receive some type of settlement agreement?
>
> The arbitration went ahead with regard to the United Securities [arbitration] with an award made to Cordaro. This amounted to a default award on my part because USA and I did not show up.
>
> I now need to hire an attorney to represent me in an appeal to FINRA explaining my side of the case.

[Doc. 80, Ex. 32 at 2.] Hall replied as follows:

> The way Tom Fehn has explained it to me is that the portion that was a sale with Cap West is settled with you included in that and we should have settlement paperwork for that shortly. That sale was, if memory serves me, a $100,000 MedCap order. The sales that occurred at USA was not [sic]. I was unaware that this case involved two sets of sales in the claim with two different [broker-dealers]. . . .
>
> The thought of you getting an attorney is only if you wanted to explain that you believed the case had been settled as it related to you and attempt to get all or a portion of the award vacated. Don't know if that would work? My understanding is that they would have to go to civil court to make this a civil award because you are no longer a rep registered with FINRA. Don't know if they want to do that, but you could argue the merits there also. Please confirm this with an attorney since I am not an attorney and I am not able to give you legal advice.

[Id. at 1.]

On June 20, 2011, Tom Fehn e-mailed Richard Rogers of Catlin, stating:

> [the Cordaros] falsely told the arbitration panel that the case had been settled as to [CapWest] but not as to Templeton for his trades while at [CapWest]. [B]oth had been settled but not papered because the settlement occurred the day before.

[Doc. 80, Ex. 34.] When Rogers asked for documentation that the Cordaros made a false statement to the panel, Fehn replied that he was not at the hearing, and that he "sent a draft agreement a few days after the settlement was reached. It included [Templeton]. I knew he had to be a part of the deal." [Id.]

Templeton admitted that he never spoke with any of the Attorney Defendants at any time regarding the Cordaro arbitration. [SUF ¶ 17.] The Attorney Defendants were never formally engaged by Catlin to represent CapWest and Templeton in the Cordaro arbitration pursuant to the Catlin Policy; indeed, the e-mails between Rogers of Catlin and Hall of CapWest in March and April 2011 show that Rogers adamantly refused to engage Attorney Defendants for any of the FINRA arbitrations.

On December 27, 2013, Templeton filed a motion for partial summary judgment for a finding that he had an attorney-client relationship with the Attorney Defendants. [Doc. 80.] That motion was denied at a hearing on July 15, 2014. [Doc. 117.] The Attorney Defendants then moved for summary judgment on Templeton's professional negligence and breach of fiduciary duties on the basis that they did not owe Templeton a duty. [Doc. 130 at 2-3.] The Attorney Defendants also moved for summary judgment on Templeton's negligent misrepresentation claim on the basis that the Attorney Defendants did not once communicate with Templeton, either orally or in writing. Templeton subsequently asked the Court to reconsider his motion for partial summary judgment. [Doc. 132.] The parties agree that the

existence of an attorney-client relationship between them is a question of law the Court must decide under California law.

With the additional evidentiary submissions and legal contentions made by the parties during this round of pleadings, it is clear that there was no attorney-client relationship between Templeton and the Attorney Defendants. There was no express contract of representation between them. The Attorney Defendants did not enter an appearance on Templeton's behalf in the Cordaro matter. The record does not show that Templeton ever paid the Attorney Defendants to represent him in the Cordaro matter, either directly or through Catlin or CapWest. Templeton did not once speak or correspond with any of the Attorney Defendants, let alone receive legal advice from them regarding the Cordaro matter. There is no evidence showing that Templeton ever disclosed confidential or sensitive information to the Attorney Defendants. By contrast, Templeton had a formal retainer agreement with Markun Zusman and was in fairly-regular contact with attorneys from that firm when it represented him and CapWest in the Cordaro matter. And when Templeton learned of the FINRA award against him, he did not contact any of the Attorney Defendants; he contacted Markun Zusman, instead. Orly Davidi's passing attempt to include Templeton in the Cordaros' settlement with CapWest as to the MedCap IV Note does not suffice to establish an attorney-client relationship. The Attorney Defendants were general counsel for CapWest in all of the FINRA arbitrations against it. The Attorney Defendants tried to get the Cordaros to agree to include Templeton in the CapWest settlement because Dale Hall wanted to be sure that Templeton would not "cook" CapWest's "goose."

Even if Templeton subjectively believed that the Attorney Defendants were representing him, that belief was unreasonable. Templeton's potential exposure in the arbitration was

significant, and he was undoubtedly aware of it. A reasonable person in Templeton's position would not rely exclusively on the assurances of a non-lawyer former business associate like Dale Hall to believe that attorneys with whom he never corresponded were representing his interests. Templeton's passivity in protecting his rights perplexes the Court. In all likelihood, this all could have been avoided by a couple of telephone calls or e-mails.

Templeton argues that even if an attorney-client relationship did not exist, the Attorney Defendants still owed him a duty as a non-client because he was the intended beneficiary of the services the Attorney Defendants provided CapWest. [Doc. 131 at 17-18.] "An essential predicate for establishing an attorney's duty of care under an 'intended beneficiary' theory is that *both* the attorney ... and the client ... intended [the non-client plaintiff] to be *the* beneficiary of legal services [the attorney] was to render." Zenith Ins. Co. v. Cozen O'Connor, 148 Cal. App. 4th 998, 1010 (Cal. App. 2007) (emphasis in original). Here, although Dale Hall told Tom Fehn that the Attorney Defendants should be representing Templeton, the record does not support the conclusion that, in entering into an attorney-client relationship, CapWest and the Attorney Defendants *both* intended Templeton to be *the* beneficiary of the Attorney Defendants' legal services. CapWest intended that *CapWest* would be the beneficiary of the Attorney Defendants' services, and as late as March 2011, Tom Fehn was specifically denying that the Attorney Defendants were representing Templeton. Templeton is a far cry from the type of intended beneficiary this doctrine is meant to protect. Accordingly, the Attorney Defendants did not owe Templeton a duty of care under an intended beneficiary theory.

Templeton did not have an express or implied attorney-client relationship with the Attorney Defendants, and the Attorney Defendants did not owe Templeton a duty of care

under an intended beneficiary theory. In the absence of a duty, Templeton's professional negligence and breach of fiduciary duty claims fail as a matter of law.

The Attorney Defendants argue that Templeton's negligent misrepresentation claim should be dismissed because Templeton does not identify any misrepresentation made by the Attorney Defendants to him. [Doc. 130 at 9-11.] An essential element of a negligent misrepresentation claim is that the defendant make a misrepresentation of a past or existing material fact. Apollo Capital Fund, LLC v. Roth Capital Partners, 70 Cal. Rptr. 3d 199, 213 (Cal. App. 2007). "[A] positive assertion is required; an omission or an implied assertion or representation is not sufficient." Id.

In his Amended Complaint, Templeton based his negligent misrepresentation claim on the allegation that the Attorney Defendants "were negligent in conveying information to [him] regarding the pending claim by the Cordaros, as well as the resolution or lack of resolution of such by settlement agreement, as well as [Templeton's] urgent need to be present at the March 29, 2011 arbitration hearing." [Doc. 20 ¶ 58.] In his Response, Templeton premises his claim on the fact that the Attorney Defendants breached their duties under the California Rules of Professional Conduct to keep him informed about developments in the arbitration. [Doc. 131 at 23.] Templeton's claim is quite clearly based on the Attorney Defendants' omissions, not on any "positive assertions" they made to him. Indeed, Templeton acknowledges that he never once communicated with any of the Attorney Defendants. [SUF ¶ 17.] Summary judgment is warranted in the Attorney Defendants' favor on Templeton's negligent misrepresentation claim.

In the absence of underlying liability, Templeton's Seventh Claim for Relief against the Attorney Defendants for exemplary damages under Colorado law must be dismissed.

Upon the foregoing, it is

ORDERED that the Attorney Defendants' Motion for Summary Judgment [Doc. 130] is granted, and it is

FURTHER ORDERED that Plaintiff Daryl Templeton's Cross Motion for Reconsideration [Doc. 132] is denied.  The clerk shall enter judgment dismissing this civil action and awarding the Attorney Defendants costs.

Dated: October 28, 2014

                                         BY THE COURT:

                                         s/Richard P. Matsch
                                         _____
                                         Richard P. Matsch
                                         Senior District Judge